UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Sheri M. Parker as Personal Representative of the Estate of Glenn Merle Morris<br><br>Plaintiff,<br><br>v.<br><br>The United States of America, HopeHealth, Inc., & Cassie Lai Ku Liang, M.D.<br><br>Defendants. | Civil Action No: 4:24cv4735- JD<br><br><br><br>COMPLAINT |

Plaintiff, by and through her undersigned counsel, complaining of the Defendants, hereby alleges as follows:

## PARTIES

**Plaintiff:**

1. Plaintiff Sheri M. Parker is the duly appointed Personal Representative of the Estate of her deceased father, Glenn Merle Morris (hereinafter "Decedent"). She brings this action on behalf of Decedent's estate for damages recoverable pursuant to S.C. Code Section §15-5-90, and for damages recoverable by Decedent's statutory beneficiaries pursuant to S.C. Code Section § 15-51-10, et seq.

Defendants:

2. The United States of America is a proper party to this action, which is being brought in part pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, et seq.

3. HopeHealth, Inc. is a nonprofit corporation organized and existing under the laws

1

of the State of South Carolina, with its principal place of business located in Florence, South Carolina.

4.      HopeHealth, Inc. is a federally qualified health center that receives federal funding to provide medical care and services to people in South Carolina.

5.      The Federally Supported Health Centers Assistance Act of 1992 (Pub.L. 102-501) provides coverage to federally supported health care centers and their employees for acts or omissions that occur on or after January 1, 1993, or when the health center is deemed eligible for coverage, whichever is later. HopeHealth, Inc. is a federally supported health center and is eligible for federal tort claim act coverage prior to any acts giving rise to liability alleged herein. Therefore, HopeHealth, Inc. is a Public Health Service covered by 42 U.S.C. §233(a) for its acts and omissions in the care and treatment of Decedent.

6.      Upon information and belief, Defendant Liang is a medical doctor and a resident of South Carolina.

7.      Attached hereto and incorporated by reference is the Affidavit of Merit of Dr. Carole Anne Rupe, M.D., as required by South Carolina Code §15-36-100.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction for this matter pursuant to its federal question jurisdiction as provided for by 28 U.S.C. §§1331 and 1346 and in compliance with 28 U.S.C. §§ 1346(b), 2671-2680, et seq., commonly known as the "Federal Tort Claims Act," which vests exclusive subject matter jurisdiction of Federal Tort Claims litigation in federal district courts.

9.      Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district and division because a substantial part of the events or omissions giving rise to this claim occurred in this district.

10. On or about June 1, 2021, Plaintiff submitted an administrative claim (Form 95) to the appropriate officer at the Department of Health and Human Services.

11. On March 7, 2024, Plaintiff's counsel received a letter from Jennifer B. Smith, Deputy Associate General Counsel of DHHS, denying Plaintiff's claim.

12. Plaintiff is hereby exercising her option of filing suit within six months of the denial of her filed Form 95 claim.

## GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

13. Plaintiff is informed and believes that at all times material to this Complaint, Defendants' employees and/or agents were acting on behalf of, or in place of, Defendants USA and HopeHealth, Inc., in making decisions regarding the care of Decedent.

14. On February 19, 2019, Decedent was a 69-year-old male with a prior history of hypertension, hyperlipidemia, COPD, GERD, anxiety, depression, and smoking history.

15. On February 19, 2019, Decedent was seen at Defendant HopeHealth, Inc.'s clinic in Manning, South Carolina, by Defendant Liang, who had been his primary care provider for several years, for a previously scheduled four-month follow-up.

16. Defendant Liang ordered a CBC with differential, platelet, TSH + Free T3, Comprehensive Metabolic Panel (CMP), and Ureic A+ ANA, +CRP +RF +qn, be performed on Decedent.

17. On February 20, 2019, Defendant Liang received Decedent's laboratory results.

18. Decedent's lipid panel revealed his triglycerides were 477 mg/dL. Defendant Liang ordered the patient to take Fenofibrate 134 mg qd with meals.

19. Decedent's CMP revealed he had a creatinine of 1.54 mg/dL, with a GFR of 46

ML/min/1.73. Defendant Liang subsequently diagnosed Decedent with stable stage 3 chronic kidney disease.

20. Decedent's stage 3 chronic kidney disease qualified as mild to moderate renal impairment.

21. The standard of care for the administration of Fenofibrate requires dose reduction in patients with mild to moderate renal impairment, such as Decedent.

22. The FDA package insert distributed to medical providers for Fenofibrate capsules (micronized) states:

> Treatment with fenofibrate capsules (micronized) should be initiated at a dose of 67 mg/day in patients having impaired renal function, and increased only after evaluation of the effects on renal function and lipid levels at this dose. In the elderly, the initial dose should likewise be limited to 67 mg/day.

23. On May 31, 2019, Decedent presented to the Emergency Department of McLeod Health Clarendon reporting severe and constant upper abdominal and chest pain, and a "little vomiting."

24. Decedent was subsequently diagnosed with acute pancreatitis and admitted to the hospital.

25. On June 2, 2019, Decedent's medical providers determined his acute pancreatitis was caused by Fenofibrate and stopped its administration.

26. On June 3, 2019, Decedent was transferred from McLeod Clarendon to McLeod Regional Medical Center due to his worsening calcium level and subjective confusion, tachypnea, and tachycardia.

27. On June 13, 2019, Decedent was discharged from McLeod Regional Medical Center as he was able to tolerate oral intake well and was stable for discharge.

28. However, on June 15, 2019, Decedent was emergently transported to the McLeod

Clarendon Emergency Department via EMS due to respiratory distress. While at McLeod Clarendon, Decedent's laboratory values indicated he was in acute renal failure and had an elevated troponin. Decedent was transferred to McLeod Regional Medical Center for potential emergent cardiac evaluation.

29. While at McLeod Regional Medical Center, Decedent's health continued to deteriorate, and he was transferred to the ICU.

30. Decedent died on July 20, 2019. His causes of death were listed as severe necrotizing pancreatitis, MRSA severe sepsis, acute hypoxemic respiratory failure, and acute kidney failure.

## FOR A FIRST CAUSE OF ACTION
(Negligence – Survivorship Cause of Action)

31. Plaintiff hereby incorporates by reference and realleges every allegation in Paragraphs 1-30 of this Complaint as if fully set forth herein.

32. Defendants, through their agents and/or employees, undertook the duty to render medical care to Decedent in accordance with prevailing and acceptable professional standards of care in the national community.

33. Notwithstanding said undertaking, and while Decedent was under the care of Defendants' agents and/or employees, Defendants departed from prevailing and acceptable professional and general standards of care in their treatment and were thereby negligent, careless, grossly negligent, reckless, and acted in violation of the duties they owed. As such, Defendants are liable for one or more of the following acts of omission or commission, any or all of which are departures from the prevailing and acceptable professional standards of care:

   a. In failing to properly set the dosage of Decedent's Fenofibrate, given his stage III chronic kidney disease;

b. In failing to order appropriate follow-up laboratory testing to monitor Decedent's renal and liver function following the introduction of Fenofibrate to his medication regime;

c. In failing to supervise the actions of Defendant Liang;

d. In failing to properly review Decedent's medical records and intervene accordingly;

e. In failing to implement policies and procedures to screen and identify hazardous medication orders; and

f. In such other ways as may be shown at trial.

34. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness, and departure from the professional and general standards of care by Defendants and their physicians, nurses, agents, and/or employees as noted above, Decedent suffered from severe debilitating injuries that caused his death. Prior to his death, Decedent suffered pain, mental anguish, and uncertainty about survival. Additionally, Decedent's estate has incurred medical bills and funeral expenses. Plaintiff, as Decedent's Personal Representative, is therefore entitled to recover from Defendants a sum of money to compensate Decedent's estate for all damages allowable under a survival action. All damages should be in amount determined by a judge at trial.

**FOR A SECOND CAUSE OF ACTION**
(Negligence – Wrongful Death)

35. Plaintiff hereby incorporates by reference and realleges every allegation in Paragraphs 1 – 34 of this Complaint as if fully set forth herein.

36. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness, and departure from the professional standards of care by Defendants and their physicians, nurses, agents, and/or employees as noted above, Decedent suffered from severe

debilitating injuries that ultimately resulted in his death and caused his beneficiaries to lose his society, consortium, and to suffer wounded feelings, shock, pain and suffering, and other damages allowed to recovered pursuant to a wrongful death action. Plaintiff, as Decedent's Personal Representative, is therefore entitled to recover from Defendants a sum of money to compensate Decedent's heirs for all damages allowable under the wrongful death action. All damages should be in amount determined by a judge at trial.

Wherefore, Plaintiff prays for judgment against the United States of America, HopeHealth, Inc., and Dr. Liang for actual damages and consequential damages in an amount to be determined by a judge at trial for punitive damages against Dr. Liang named in her individual capacity for any acts considered grossly negligent or reckless, for the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

s/Julia M. Flumian
Daniel W. Luginbill (Fed Bar No. 07600)
Julia M. Flumian (Fed Bar No. 10544)
McGowan, Hood & Felder, LLC
10 Shem Drive, Suite 300
Mt. Pleasant, SC 29464
(843) 268-0251
dluginbill@mcgowanhood.com
jflumian@mcgowanhood.com

Attorneys for Plaintiff

August 29, 2024
Mount Pleasant, SC